**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23-cv-21875-ALTMAN/Reid

**MED-STOP, INC.**,

    *Plaintiff*,

v.

**VANDUTCH, INC.**, *et al.*,

    *Defendants*.

_____/

**ORDER GRANTING MOTION TO DISMISS**

Our four remaining Defendants—Vandutch, Inc. ("VDI"), Vandutch USA ("VDUSA"), Jacobus Mast, and Reed Nicol—have moved to dismiss the Plaintiff's Complaint. *See* Motion to Dismiss ("MTD") [ECF No. 115]. The MTD has been fully briefed and is ripe for adjudication. *See* Plaintiff's Memorandum Response to Motion to Dismiss ("Response") [ECF No. 116]; Reply in Support of Motion to Dismiss ("Reply") [ECF No. 117]. After careful review, we **GRANT** the Defendants' Motion to Dismiss because all of the Plaintiff's claims are barred by Florida's "independent tort doctrine," and because—to the extent that doctrine might not apply—the Plaintiff has failed to state a claim against the Defendants.

**THE FACTS**

Looking to purchase a yacht, our Plaintiff, Med-Stop, Inc., contracted with VDI, "a Florida corporation conducting a yacht brokerage, sales, and distribution business[.]" Complaint [ECF No. 1] ¶ 2. Med-Stop negotiated with Reed Nicol—VDI's "past vice-president and COO"—to purchase "a new forty (40) foot VanDutch yacht[.]" *Id.* ¶¶ 5, 10. Med-Stop and VDI executed a "New Purchase Agreement" (the "Contract"), providing that "the Yacht would be manufactured in Italy by [Cantiere del Pardo, S.p.A. ('CDP')]" and that the Yacht would be delivered "on or before October 29, 2021."

*Id.* ¶ 12.[1] Jacobus Mast, the president of VDI, "directed and approved" the "entry of the Contract with Med-Stop." *Id.* ¶ 19. The Contract listed a "stated purchase price of the Yacht [at] $751,925.00" and required Med-Stop to put down a $150,385.00 "initial deposit." *Id.* ¶¶ 13, 17. The Contract specified that Med-Stop was to wire the initial deposit to VDI's Bank of America account in New York. *See id.* ¶ 15 ("The wire transfer instructions within the Contract identified a [VDI] account . . . at Bank of America, N.A. in New York to accept the deposit."). Med-Stop wired the deposit to VDI "[o]n the morning of March 24, 2021," and Nicol confirmed that the wire was received "the same day through a 5:29 p.m. text message . . . to Med-Stop." *Id.* ¶¶ 17–18.

Unfortunately for Med-Stop, it never received its yacht. According to Med-Stop, VDI, Mast, and Nicol all knew at the time the Contract was executed that CDP "was not honoring any new or existing yacht contracts originated by [VDI]" and that at least fifteen other VDI customers hadn't received their deposits back even though CDP "had not even begun" manufacturing their yachts. *Id.* ¶¶ 29, 31. This dispute between CDP and VDI arose because Mast apparently refused to comply with a 2020 Distribution Agreement between the parties, which required that "all VanDutch yacht orders were to [be] submitted to CDP through [VDUSA], together with a 20% down payment, not through [VDI] or some [other] intermediary." *Id.* ¶ 37. On May 5, 2021, CDP's board of directors terminated the 2020 Distribution Agreement and told Mast that VDI would have to "do it themselves" to fulfill their remaining orders. *Id.* ¶ 40. Mast predicted that CDP's "refusal to honor the outstanding VanDutch contracts" would cause "a direct bankruptcy" of VDI and would be "3x Hiroshima." *Id.* ¶ 39.

---

[1] CDP "is an Italian joint-stock company engaged in the manufacture, sale, and distribution of luxury yachts," and which entered into a "distribution agreement" with VDUSA "lasting from June 8, 2020 through May 7, 2021." Complaint ¶ 6. VDUSA is a "dissolved" corporation that shared the same officers (Mast and Nicol) with VDI. *Id.* ¶ 3. CDP was previously a Defendant in this action, but we dismissed CDP from the case after it reached a settlement with Med-Stop. *See* Order of Dismissal [ECF No. 93].

2

On June 28, 2021, Med-Stop asked Nicol about "the progress being made on the manufacture of its Yacht." *Id.* ¶ 43. Nicol—who had since "resigned as an officer of both [VDI] and [VDUSA]"—directed Med-Stop to contact Mast. *Id.* ¶¶ 42, 44. Mast promised Med-Stop "to either close the deal, or return Med-Stop's deposit, within the next two weeks." *Id.* ¶ 45. That promise was never honored, and neither Mast nor Nicol told Med-Stop that "CDP has not even begun manufacture of Med-Stop's Yacht[.]" *Id.* ¶¶ 46, 48. Med-Stop has since made "repeated demands for the return of its deposit[,]" but it has not, "to date, . . . received a return of any of its deposit monies." *Id.* ¶ 50.

In its Complaint, Med-Stop asserts nine claims against the Defendants. Count I alleges fraud in the inducement against VDI, Mast, and Nicol for obtaining the Contract "through knowingly false and reckless misrepresentations and omissions[.]" *Id.* ¶ 54. Count II is a civil-theft claim against VDI, Mast, and Nicol for "knowingly obtaining $150,385.00 belonging to Med-Stop with the intent to appropriate these funds for their own use[.]" *Id.* ¶ 62. Count IV alleges that VDI, Mast, and Nicol refusal "to return Med-Stop's deposit despite repeated demands constitutes conversion." *Id.* ¶ 79. Count VI avers that VDI, Mast, and Nicol "breached their fiduciary duty to Med-Stop through their acts and omissions relating to the March 22, 2021 Yacht sale transaction." *Id.* ¶ 85. Count VIII advances a common law fraud claim against VDI, Mast, and Nicol for their "alleged acts, misrepresentations, and omissions" during "the negotiation and sale transaction of Med-Stop's Yacht[.]" *Id.* ¶ 93. Finally, Counts III, V, VII, and IX all allege that VDUSA aided and abetted the other Defendants' civil theft, conversion, breach of fiduciary duty, and fraud (respectively) by failing to inform VDI's customers about this wrongdoing. *See id.* ¶¶ 74, 82, 90, 98.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this

"plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016).

## ANALYSIS

In their MTD, the Defendants advance five arguments. *First*, the Defendants say that Florida's "Yacht and Ship Brokers' Act" (the "YSB Act") "is inapplicable to this case," and that, even if it were applicable, it confers "no private right of action" on the Plaintiff. MTD at 4. *Second*, the Defendants contend that Med-Stop's claims—all nine of which sound in tort—are barred by Florida's "independent tort doctrine." *Id.* at 7. *Third*, the Defendants argue that all nine counts fail to state a viable claim under Florida law. *See generally id.* at 8–15. *Fourth*, the Defendants ask us to dismiss Med-Stop's claims against Mast and Nicol "because all of their actions were on behalf of VDI and/or VDUSA, and not in their individual capacities." *Id.* at 16. *Fifth*, the Defendants urge us to dismiss Med-Stop's Complaint as a shotgun pleading because "each count adopts all preceding paragraphs." *Id.* at 18.

Before we get to the MTD's specifics, we'll quickly address the issue of waiver. Our Local Rules state that "each party opposing a motion shall file and serve an opposing memorandum of law[.]

4

. . . Failure to do so may be deemed sufficient cause for granting the motion by default." S.D. FLA. L.R. 7.1(c)(1); *see also, e.g.*, *Weeks v. Braddy*, 2023 WL 2610290, at *1 n.1 (S.D. Fla. Mar. 23, 2023) (Altman, J.) ("Because Weeks didn't file a Response, we GRANT the Defendants' motions [to dismiss] by default."). And the Eleventh Circuit has repeatedly held "the failure to make arguments and cite authorities in support of an issue waives it." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012); *see also In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). Although Med-Stop filed a Response to the MTD, that Response "failed to rebut numerous legal arguments and authorities raised in the [MTD]." Reply at 8.

In these circumstances, we agree with the Defendants that we can (and should) "grant [the] Defendants' [MTD] on each ground for which [Med-Stop] failed to respond[.]" Reply at 8; *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. Also, when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (cleaned up)); *Sanchez v. Bengoa Constr., Inc.*, 2024 WL 2797373, at *2 (S.D. Fla. Apr. 22, 2024) (Singhal, J.) ("Plaintiff failed to respond to Defendants' Motion with respect to their arguments that Plaintiff failed to state a claim for unjust enrichment (Count V) and that Plaintiff's claims for attorneys' fees and punitive damages in relation to Counts IV and V should be stricken. . . . Accordingly, Count V is dismissed as to both Defendants, and Plaintiffs' request for attorneys' fees and punitive damages in relation to Counts IV and V are stricken."); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (Altonaga, J.) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."). In the interest of completeness, though, we'll address each of the Defendants' arguments on the merits.

I.      Application of the Yacht and Ship Brokers Act

Med-Stop alleges that VDI, Mast, and Nicol "were acting as 'persons,' as defined in [the YSB Act], engaged in the negotiation and sale transaction of a new forty (40) foot VanDutch yacht to Med-Stop." Complaint ¶ 20. Because these Defendants were acting as yacht brokers under Florida law, Med-Stop says the Defendants should have (but did not) "maintain Med-Stop's deposit in a trust account with a financial institution located in the state of Florida, and to maintain a separate record of all such monies received and the disposition thereof." *Id.* ¶ 23. The Defendants respond that they are not "yacht brokers" within the meaning of the YSB Act since they (1) don't sell "yachts for other persons" and (2) were selling "a new yacht." MTD at 4. The Defendants also say that the YSB Act "does not provide for any private right of action based upon alleged violations of the Act, other than an action for damages upon the surety bonds that licensees are required to have for yacht brokerage transactions pursuant to [FLA. STAT.] § 326.004(11)." *Id.* at 6.

We agree with the Defendants that the YSB Act doesn't apply here. By their own terms, the Act's escrow regulations apply only to "brokers." *See* FLA. STAT. § 326.005(1) ("A broker shall place any funds received pursuant to a transaction into a trust account in a savings and loan association, bank, trust company, or other financial institution located in this state . . . until he or she disburses such funds.").[2] The YSB Act defines a "broker" as a person (or entity) "who, for or in expectation of compensation: sells, offers, or negotiates to sell; buys, offers, or negotiates to buy; solicits or obtains

---

[2] The Defendants' belief that the YSB Act doesn't "apply to any transaction involving the sale of a new yacht" is incorrect. MTD at 4 (cleaned up). This "new yacht" exception only governs the Act's licensing requirements. *See* FLA. STAT. § 326.004(3)(d) ("A license is not required for . . . [a] transaction involving the sale of a new yacht."). The Act's other, non-licensing requirements plainly apply to *all* brokers, even if they're selling a new yacht. *See* Response at 6–7 ("Here, even if Movants were entitled to a licensing exemption, it is a leap of logic to contend that (as non-dealers) they would be continuing to act as anything other than unlicensed brokers or salespersons. Such a limited license exemption does not swallow the statutory definitions of 'Broker' and 'Salesperson,' and does not automatically absolve Movants from the remaining statutory obligations imposed upon 'Brokers' and 'Salespersons.'").

listings of; or negotiates the purchase, sale, or exchange of, yachts *for other persons*." *Id.* § 326.002(1) (emphasis added). The statute's language here is "plain and unambiguous," so "there is no need for further inquiry." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). Since VDI, Mast, and Nicol were "not selling the Van Dutch yacht 'for other persons,'" they aren't "brokers" under the YSB Act. MTD at 5 (quoting FLA. STAT. § 326.002(1)).

Still resisting, Med-Stop claims that "the Agreement concerns the purchase and sale of a (yet to be manufactured) yacht for another person—*i.e.* Med-Stop." Response at 6. This is absurd. Under Florida law, a broker is "an intermediary between a principal and a third person in the matter of business transactions[.]" *State ex rel. Davis v. Rose*, 122 So. 225, 230 (Fla. 1929); *see also Gerber v. Keyes Co.*, 443 So. 2d 199, 200 (Fla. 3d DCA 1983) ("When acting as an intermediary between a seller and a prospective buyer a broker is under a duty to deal fairly and honestly with both parties."). This is consistent with the commonly understood role of a "broker." *See, e.g.*, *Broker*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/broker (last visited Jan. 2, 2025) ("[S]omeone who acts as an intermediary: such as . . . an agent who negotiates contracts of purchase and sale[.]"). The Defendants cannot be brokers in our case because they sold *their* yacht *directly* to Med-Stop. *See* Complaint ¶ 10 ("Med-Stop signed [the Contract] with [VDI] for the purchase of a new forty (40) foot VanDutch yacht[.]"); Reply at 4 ("The agreement is clear that Plaintiff purchased a new yacht from VanDutch Inc. VDI was not a broker—it was the seller of a new yacht[.] (cleaned up)). Since the Defendants were not "brokers" under the YSB Act, they weren't required to abide by the Act's requirements.

That said, all nine of Med-Stop's counts are based on violations of Florida tort law—which is another way of saying that none purport to state a claim under the YSB Act. *See generally* Complaint at 12–22; *see also* Response at 5 n.6 ("Indeed, regardless of [the YSB Act's] applicability to Movants, Florida's common law is sufficient to sustain Plaintiff's fraudulent inducement, breach of fiduciary

duty, conversion, and fraud claims." (citing *Gochnauer v. A.G. Edwards & Sons, Inc.*, 810 F.2d 1042, 1051 (11th Cir. 1987))).[3] So, after reviewing the Complaint's allegations, we find that the YSB Act is relevant in only two respects. *One*, Med-Stop suggests that the Defendants' failure to comply with the YSB Act is evidence that they breached their fiduciary duty to Med-Stop. *See* Complaint ¶ 25 ("Neither [VDI, Mast, nor Nicol] complied with [the] statutory deposit requirements of the [YSB Act]—nor even informed Med-Stop of their fiduciary duty to do so."); *but cf. id.* ¶¶ 27–28 (also alleging that VDI, Mast, and Nicol were operating as "yacht 'merchant[s]' as defined in section 672.104 of the Florida Statutes" which meant they owed Med-Stop "an additional statutory duty of good faith"). *Two*, Med-Stop alleges that the YSB Act required the Defendants "to maintain [Med-Stop's] deposit in an escrow or trust account in bank located in Florida[.]" *Id.* ¶ 62. We'll discuss the relevance of these two issues later on in this Order. *See infra* Section III. For now, though, we'll simply disregard any part of the Complaint which indicates that, in their dealings with Med-Stop, the Defendants acted as "yacht brokers" under the YSB Act.

## II.   Med-Stop's Claims are Barred by the Independent Tort Doctrine

Which brings us to the "independent tort doctrine"—"a general principle of law that provides 'a plaintiff may not recover in tort for a contract dispute unless the tort is independent of any breach of contract.'" *Costa Invs., LLC v. Liberty Grande, LLC*, 353 So. 3d 627, 632 (Fla. 4th DCA 2022) (quoting *Un2jc Air 1, LLC v. Whittington*, 324 So. 3d 1, 3 (Fla. 4th DCA 2021)); *see also BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) (Scola, J.) ("Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." (cleaned up)). This doctrine "only applies, however, to the parties to the

---

[3] Since Med-Stop doesn't purport to assert a cause of action under the YSB Act, we needn't (and won't) address the Defendants' argument that the YSB Act "does not provide for any private right of action based upon alleged violations of the Act, other than an action for damages upon the surety bonds that licensees are required to have for yacht brokerage transactions pursuant to § 326.004(11)." Motion at 6.

8

contract." *Costa Invs.*, 353 So. 3d at 632. Similarly, "the independent tort doctrine does not bar claims where the plaintiff has alleged conduct that is independent from acts that breached the contract and does not itself constitute breach of the contract at issue." *Matonis v. Care Holdings Grp., LLC*, 423 F. Supp. 3d 1304, 1311 (S.D. Fla. 2019) (Ungaro, J.); *accord HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract."). In short, the independent tort doctrine requires a plaintiff to "plead a tortious action committed separate and apart from the breach of contract." *Perez v. Scottsdale Ins. Co.*, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.).

    The Defendants believe that all nine of Med-Stop's claims are barred by the independent tort doctrine. In the Defendants' view, "the substance of Plaintiff's claim[s] is a breach of contract," and (the Defendants continue) Med-Stop failed to "allege any tort damages that are independent, separate and distinct from the damages sustained from the contract's breach, as required to maintain separate tort claims against the Defendants." MTD at 7. Med-Stop musters three arguments in response: (1) the independent tort doctrine doesn't apply when "the contract itself was procured through fraudulent inducement separate from a mere breach of contract"; (2) the doctrine "has been relegated to product liability cases since 2013"; and (3) Florida law "provides for an election of remedies . . . in fraudulent inducement cases[.]" Response at 8–9. Finding none of these responses persuasive, we conclude that the independent tort doctrine applies here.

    To begin with, Med-Stop, Nicol, and Mast all "share contractual privity with one another through the contract at issue[.]" *Yuken Corp. v. Gedcore LLC*, 2022 WL 3701233, at *3 (S.D. Fla. June 21, 2022) (Altonaga, C.J.).[4] On the one hand, VDI is the only Defendant who was a party to the

---

[4] Conversely, since VDUSA was not a party to the Contract, the independent tort doctrine doesn't apply to Med-Stop's claims against it. *See generally* Complaint at 23–28 (indicating that the Contract was between Med-Stop and VDI).

9

Contract between it and Med-Stop (although Nicol signed the Contract on behalf of VDI). *See* Complaint at 28 (showing signature page). But "courts also recognize that where a tort claim against a company would be barred by the [independent tort doctrine] because it is based on the same conduct giving rise to the claim for breach, claims against the company's officers or employees based on the same conduct are likewise barred." *HW Aviation LLC v. Royal Sons, LLC*, 2008 WL 4327296, at *5 (M.D. Fla. Sept. 17, 2008) (Merryday, J.); *see also, e.g.*, *Luigino's Int'l, Inc. v. Miller*, 311 F. App'x 289, 294 (11th Cir. 2009) ("We recognize that contractual privity may not be required when a tort action is barred against a corporation under the economic loss rule and its corporate employee is being sued for the same tortious conduct."); *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1371 (S.D. Fla. 2008) (Moore, J.) (applying independent tort doctrine to non-signatory employees to avoid "incongruous result that the [doctrine] would bar applicable tort claims against a corporation, but not against the directors or officers who negotiated the agreement"); *Vesta Constr. & Design, LLC v. Lotspeich & Assocs., Inc.*, 974 So. 2d 1176, 1180 (Fla. 5th DCA 2008) ("Given that a corporation can only act through its employees, . . . it would completely undermine the contractual privity economic loss rule to allow any party which contracts with a corporation to avoid the rule by simply bringing its tort claim directly against the corporate officers or employees tasked with performing the contract on behalf of the corporation."). Since Med-Stop is suing VDI, Nicol, and Mast "for the same tortious conduct," *Luigino's Int'l*, 311 F. App'x at 294; *see generally* Complaint at 12–22, these three Defendants and Med-Stop are all in contractual privity with one another for purposes of the independent tort doctrine.

   We also agree with the Defendants that the independent tort doctrine must apply here because "the substance of Plaintiff's claims amounts to a breach of contract—and nothing more." MTD at 7. Med-Stop contends that "the Complaint properly alleges that the contract itself was procured through fraudulent inducement separate from a mere breach of contract[.]" Response at 8. And it's true that,

10

under Florida law, claims sounding in fraud (such as fraudulent inducement) "do[ ] not altogether run afoul of the independent tort doctrine," so long as the plaintiff alleges that the fraud concerns "pre-contract misrepresentations"—as opposed to representations that "concern the heart of the parties' agreement[.]" *Yuken Corp.*, 2022 WL 3701233, at *5 (quoting *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77–78 (Fla. 3d DCA 1997)); *see also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (holding that a fraudulent-inducement claim can survive the independent tort bar where "the fraud allegations are separate and distinct from defendants' performance under the contract"); *Kaye v. Ingenio, Filiale De Loto-Quebec, Inc.*, 2014 WL 2215770, at *5 (S.D. Fla. May 29, 2014) (Rosenbaum, J.) ("In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether the alleged fraud is separate from the performance of the contract.").

Med-Stop's fraudulent-inducement and fraud claims are all premised on one key omission[5]—that "CDP was not honoring *any* new or existing yacht contracts originated by [VDI]." Complaint ¶ 31. At first glance, this omission *could* be "separate from the essence of the agreement" because the identity of a product's manufacturer isn't necessarily central to "the performance of the contract." *Yuken Corp.*, 2022 WL 3701233, at *6. But Med-Stop *admits* that the Contract between it and VDI "provided that the Yacht would be manufactured in Italy by CDP[.]" Complaint ¶ 12; *see also id.* at 24 ("Buyer agrees to purchase from [VDI] a VanDutch yacht manufactured by [CDP]."). Since the Contract expressly provides that CDP would manufacture Med-Stop's yacht, the Defendants' alleged failure to inform Med-Stop that CDP was no longer manufacturing yachts for VDI is the type of fraudulent misrepresentation that's "inseparably embodied in the parties' [written] agreement." *Hotels of Key Largo*, 694 So. 2d at 77; *see also Kaye*, 2014 WL 2215770, at *5 ("While the initial promise may

---

[5] "Florida law recognizes that fraud can occur by omission." *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003).

11

have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement. As a result, any failure to comply with those terms results in an action for breach of contract."); *Monsoon, Inc. v. Bizjet Int'l Sales & Support, Inc.*, 2017 WL 747555, at *10 (S.D. Fla. Feb. 27, 2017) (Marra, J.) ("In this case, the alleged pre- and post-contract misrepresentations relate exclusively to the Defendant's performance of the contract and cannot therefore be said to give rise to an independent cause of action in tort."). And, because the Defendants' alleged fraud is inextricably intertwined with the Defendants' performance on the Contract, the independent tort doctrine applies.

Med-Stop's civil theft, conversion, and breach of fiduciary duty claims are also entwined with the Defendants' alleged breach of contract and, therefore, must likewise be dismissed. The Plaintiff's civil-theft and conversion claims are premised on the Defendants' purported refusal to refund Med-Stop its $150,385.00 deposit. *See* Complaint ¶¶ 62, 79. Of course, the only reason the Defendants received Med-Stop's deposit in the first place was because the contract demanded it, *see id.* ¶ 17 ("On the morning of March 24, 2021, Med-Stop wired its $150,385.00 initial deposit as instructed in the Contract."), so the conversion and civil-theft claims can't be independent from the breach of the contract, *see Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008) ("This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract."). Similarly, "[a] breach of fiduciary duty claim is independent when the duty or relationship arises outside of, or independent from, the contract." *Sch. Bd. of Osceola Cnty., Fla. v. Gallagher Benefit Servs., Inc.*, 2022 WL 19914514, at *6 (M.D. Fla. June 22, 2022) (Conway, J.). And Med-Stop itself concedes that the Defendants only owed it a duty after they "engaged in the sale transaction of a new forty (40) foot VanDutch yacht to Med-Stop." Complaint ¶ 27. None of Med-Stop's claims, in short, are "independent" from the Defendants' alleged breach of contract.

12

Med-Stop's other counterarguments are equally unavailing. *First*, Med-Stop incorrectly suggests that the independent tort doctrine "has been relegated to product liability cases since 2013." Response at 9 (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Co., Inc.*, 110 So. 3d 399, 407 (Fla. 2013)). But, as we've previously explained, "the independent-tort doctrine creates a 'separate hurdle' *Tiara* 'left intact,' which requires 'a party to demonstrate that the tort is independent of any breach of contract claim.'" *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1308 (S.D. Fla. 2022) (Altman, J.) (cleaned up) (quoting *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014))). And, as Magistrate Judge Strauss recently explained, Florida courts "have reaffirmed [the use of] Florida's independent tort doctrine" in non-products-liability cases. *Inspirations Nev. LLC v. Med Pro Billing, Inc.*, 2021 WL 2156677, at *5 (S.D. Fla. May 26, 2021) (Strauss, Mag. J.) (first citing *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017); then citing *Island Travel & Tours, Ltd., Co. v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239 (Fla. 3d DCA 2020); and then citing *Prewitt Enters., LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016)). "Whatever the label," in short, "the principle that the breach of a contractual duty establishes only a breach-of-contract claim remain[s] the governing law." *Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1346 (M.D. Fla. 2018) (Merryday, J.).

*Second*, Med-Stop's reliance on *Mazzoni Farms, Inc. v. E.I. Dupont De Nemours & Co.*, 761 So. 2d 306 (Fla. 2000), is misplaced. Med-Stop appears to cite *Mazzoni Farms* for the proposition that it can "elect" to seek damages sounding in tort *instead of* pursuing a breach-of-contract claim. *See* Response at 9 ("The allegations of Movant's intentional misrepresentations, omissions of material fact, and Plaintiff's justifiable reliance—all contained within the Complaint as identified above—form the basis for Med-Stop's independent torts and Plaintiff is entitled to seek any and all attendant remedies in its Complaint."). But, as the Defendants rightly observe, it "is unclear how *Mazzoni Farms* has any relevance to this case[.]" Reply at 6. After all, *Mazzoni Farms* said nothing at all about the independent

13

tort doctrine. Instead, the case merely reaffirmed the uncontroversial proposition that, if a plaintiff successfully alleges a fraudulent-inducement claim, that plaintiff has the right to seek either "rescission, whereby the party repudiates the transaction, or damages, whereby the party ratifies the contract." 761 So. 2d at 313. Needless to say, the question of what remedies are available to a plaintiff in a fraudulent-inducement case has nothing to do with the salient issue here—*viz.*, whether Med-Stop can advance a fraudulent-inducement claim without violating the independent tort doctrine. We find that it cannot.[6]

The Defendants, in sum, have convincingly shown that "[t]his case should be nothing more than a straight-forward, garden variety breach of contract case arising from a written agreement to sell a yacht to the Plaintiff." MTD at 1. We therefore **DISMISS** Med-Stop's claims against VDI, Nicol, and Mast.[7]

---

[6] Med-Stop *could* also be suggesting—though its Response doesn't clearly articulate this argument—that a breach-of-contract action against the Defendants would be legally inadequate. *See* Complaint ¶ 60 ("Med-Stop's remedy at law is inadequate and, in any event, section 672.721 of the Florida Statutes, which applies to the sale of goods in Florida, specifically provides that [n]either rescission or a claim for rescission of the contract for sale shall bar or be deemed inconsistent with a claim for damages." (cleaned up)). But, if this is what Med-Stop is saying, this argument makes little sense since, even without its fraud claims, Med-Stop could still recover compensatory damages in a breach-of-contract action. *See R.D.M.H., Inc. v. Dempsey*, 618 So. 2d 794, 794–95 (Fla. 5th DCA 1993) ("An award of compensatory damages for both breach of contract and fraud is erroneous where the plaintiff fails to establish that he sustained compensatory damages based on fraud which were in any way separate or distinguishable from the compensatory damage award for breach of contract.").

[7] The Defendants also suggest that Med-Stop cannot assert any claim against Nicol and Mast—whether the independent tort doctrine applies or not—"because all of their actions were on behalf of VDI and/or VDUSA[.]" Motion at 16. We disagree. "Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents." *Littman v. Commercial Bank & Tr. Co.*, 425 So. 2d 636, 640 (Fla. 3d DCA 1983); *see also White-Wilson Med. Ctr. v. Dayta Consultants, Inc.*, 486 So. 2d 659, 661 (Fla. 1st DCA 1986) ("However, there is substantial authority that Day may be sued for tortious acts or derelictions of duty in which he is alleged to have personally participated. Individual officers and agents of a corporation are personally liable where they have committed a tort even if such acts are performed within the scope of their employment or as corporate officers or agents."). And the Defendants' reliance on "piercing the corporate veil" cases are inapposite since Med-Stop only brought tort claims and doesn't allege that Nicol or Mast "ignor[ed] corporate formalities or us[ed] [the] corporation for the stockholder's personal interest[.]" *Century Sr. Servs. v. Consumer Health Benefit Ass'n, Inc.*, 770 F. Supp. 2d 1261, 1265 (S.D. Fla. 2011) (Martinez, J.).

### III. Med-Stop Also Fails to State a Claim

But here's the thing. Even if the independent tort doctrine didn't apply here, we'd still find that Med-Stop has failed to state a viable claim against any of the Defendants.

#### A. The Fraud Claims (Counts I and VIII)

In Count I, Med-Stop asserts a fraudulent-inducement claim—and, in Count VIII, Med-Stop advances a claim of common-law fraud. *See* Complaint ¶¶ 54, 93. "The essential elements of common-law fraud are: (1) a false statement of fact; (2) known by the person making the statement to be false at the time it was made; (3) made for the purpose of inducing another to act in reliance thereon; (4) action by the other person in reliance on the correctness of the statement; and (5) resulting damage to the other person." *Gandy v. Trans World Computer Tech. Grp.*, 787 So. 2d 116, 118 (Fla. 2d DCA 2001).[8] The Defendants contend that Med-Stop's fraud claims fail for three reasons: (1) because Med-Stop failed to plead "any of the . . . elements to state a cause of action for fraud in the inducement against VDI and Mast," MTD at 8; (2) because Counts I and VIII "are actually claims for fraud in the performance" and are therefore "barred as a matter of law," *id.* at 19; and (3) because Med-Stop "fail[ed] to allege fraud with particularity" as required by FED. R. CIV. P. 9(b), *id.* at 11. We agree with the Defendants' third argument that Med-Stop failed to plead fraud with particularity.

For starters, Med-Stop never responded to this argument, so it has forfeited any right to challenge it. *See Jones*, 564 F. App'x at 434 ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."). More importantly, Med-Stop's allegations fail to identify "the circumstances constituting fraud . . . with particularity." FED. R. CIV. P. 9(b). Rule 9(b) requires a plaintiff alleging fraud to show: "(1) the precise statements, documents, or

---

[8] The elements of fraudulent inducement and common-law fraud are very similar. *See Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012) ("The elements of a claim for fraudulent inducement are: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment." (cleaned up)).

misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (cleaned up). Med-Stop comes nowhere close to meeting any of these requirements. Instead, it says only—in general and perfunctory terms—that the Defendants made "false and reckless misrepresentations and omissions." Complaint ¶ 54; *see also id.* ¶¶ 93–94 ("The alleged acts, misrepresentations, and omissions of [the Defendants] regarding the negotiation and sale transaction of Med-Stop's Yacht were done knowingly, intentionally, and willfully. These alleged acts, misrepresentations, and omissions were fraudulent."). Although Med-Stop's Complaint references certain events that we could construe as relevant "acts, misrepresentations, and omissions[,]" *see generally id.* ¶¶ 10–50, Med-Stop never clearly identifies "the precise . . . misrepresentations made" by the Defendants or "the content and manner in which" Med-Stop was misled by the Defendants' statements, *Am. Dental Ass'n*, 605 F.3d at 1291. The Complaint's failure to alert the Defendants "to the precise misconduct with which they are charged" means that Med-Stop failed to satisfy Rule 9(b)'s heightened pleading requirement. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (cleaned up). Accordingly, Counts I and VIII are **DISMISSED**.

### B. The Civil Theft and Conversion Claims (Counts II and IV)

As for Med-Stop's civil-theft and conversion claims, the Defendants say that "a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft." MTD at 11. Although this is a correct statement of Florida law, *see Gasparini*, 972 So. 2d at 1055 ("It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft."), Florida law creates an exception for situations in which the theft or conversion goes "beyond, and [is] independent from, a failure to comply with the terms of a contract," so long as "there [is] an obligation to keep intact or deliver the specific money in question, so that money can be identified." *Ibid.* (quoting *Futch v. Head*, 511 So. 2d

16

314, 320 (Fla. 1st DCA 1987)). This exception doesn't apply here. The Defendants wrongfully retained Med-Stop's $150,385.00, if at all, in direct violation of the terms of the Contract. *See* Complaint ¶ 17 ("Med-Stop wired its $150,385.00 initial deposit as instructed in the Contract."). And, because the YSB Act doesn't govern this transaction, "VDI had no contractual or legal obligation to hold [Med-Stop's] deposit in escrow." MTD at 12; *see also* FLA. STAT. § 326.005(1) ("*A broker* shall place any funds received pursuant to a transaction into a trust account in a savings and loan association, bank, trust company, or other financial institution located in this state having a net worth in excess of $5 million until he or she disburses such funds." (emphasis added)). Since this kind of "simple monetary debt" is insufficient to state a claim for civil theft and conversion under Florida law, Counts II and IV are **DISMISSED**.

### C. The Breach of Fiduciary Duty Claim (Count VI)

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). Med-Stop says that the Defendants' duty arises from two different sources: the YSB Act and FLA. STAT. § 672.104. *See* Complaint ¶ 24 ("Moreover, operating as a yacht broker in Florida, [VDI] owed a fiduciary duty to their buyer, Med-Stop[.]"); *id.* ¶ 28 ("Operating as, or on behalf of, a yacht merchant in Florida, [the Defendants] owed an additional statutory duty of good faith . . . and fair dealing to their buyer, Med-Stop."). The Defendants argue that Med-Stop's breach-of-fiduciary duty claim fails because it "is predicated upon its false characterization of [the Defendants] as 'yacht brokers'" and because "[a] fiduciary relationship does not exist in an arms' length transaction." MTD at 14. We agree.

Although Med-Stop forfeited its right to challenge the Defendants' argument by failing to respond to it, *see Jones*, 564 F. App'x at 434, the Defendants also happen to be right. Neither of these statutes created a fiduciary duty flowing from the Defendants to Med-Stop. As we've said, the

17

Defendants aren't "brokers," so the YSB Act doesn't apply. *See ante*, at 7. And FLA. STAT. § 672.104 merely defines a "merchant" as "a person who deals in goods of the kind or otherwise by occupation holds himself or herself out as having knowledge or skill peculiar to the practices or goods involved in the transaction[.]" Even if we assume that the Defendants are "merchants" within the meaning of that statute, the Defendants' status as "merchants," standing alone, doesn't give rise to a fiduciary duty. Florida law is clear that there's no fiduciary duty between a merchant and a buyer during an arms'-length transaction. *See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003) ("When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."); *Stonepeak Partners, LP v. Tall Tower Capital, LLC*, 231 So. 3d 548, 552–53 (Fla. 2d DCA 2017) ("A fiduciary relationship does not exist in an arms' length transaction."); *see also Immediate Capital Grp., Inc. v. Spongetech Delivery Sys., Inc.*, 2010 WL 1644952, at *2 (S.D. Fla. Apr. 22, 2010) (Huck, J.) ("Thus, an ordinary commercial transaction generally does not give rise to a fiduciary relationship."). Since the Defendants did not owe Med-Stop a fiduciary duty, they could not have breached that duty. Count VI is therefore **DISMISSED**.

### D. The Aiding-and-Abetting Claims (Counts III, V, VII, and IX)

In addition to alleging that VDI, Mast, and Nicol engaged in tortious conduct, Med-Stop also claims that VDUSA aided and abetted the civil theft, conversion, breach of fiduciary duty, and fraud. *See* Complaint ¶¶ 66, 82, 90, 98. To assert a proper aiding-and-abetting claim, "a plaintiff must allege: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012); *see also, e.g.*, *Gilison v. Flagler Bank*, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) ("To successfully plead the claim of aiding and abetting fraud, the plaintiffs must allege the: (1) existence of

18

the underlying fraud; (2) knowledge of the fraud; and (3) the defendant provided substantial assistance to the commission of the fraud."). Since Med-Stop failed to allege "an underlying violation on the part of [the other Defendants]," *Lawrence*, 455 F. App'x at 906, its aiding-and-abetting claims against VDUSA fail as a matter of law, *see* MTD at 15 ("[E]ach of Plaintiff's claims against VDUSA must be dismissed because Plaintiff fails state a cause of action for the requisite underlying claim/violation on the part of the alleged primary wrongdoers. If Plaintiff's claims for civil theft, conversion, breach of fiduciary duty and fraud are dismissed, then the aiding and abetting claims necessarily fail as well."). We therefore **DISMISS** Counts III, V, VI, and IX.

\*     \*     \*

A dismissal under FED. R. CIV. P. 12(b)(6) is typically "on the merits and with prejudice." *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020). "A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc); *see also Anderson v. Ahluwalia*, 2022 WL 3156409, at \*4 (11th Cir. Aug. 8, 2022) ("If the district court had properly dismissed all of Plaintiffs' Count I negligence claims for failure to state a claim, then, under our rule in *Daewoo*, it would not have been required to sua sponte give Plaintiffs a chance to amend before dismissing with prejudice."). And Med-Stop has *never* asked us for an opportunity to amend its Complaint, *see generally* Docket; Response, nor did it try to amend its complaint in response to the Defendants' MTD, *cf. Pitts v. Grant*, 2022 WL 1117454, at \*2 (11th Cir. Apr. 14, 2022) ("Under Federal Rule of Civil Procedure 15(a)(1)(B), Pitts had an unchecked opportunity to amend his complaint in response to the officials' motions. But he didn't take it. . . . [T]he district court [was not] required to propose the idea itself."). We won't be giving Med-Stop a second opportunity it never requested. We therefore find that this case should be dismissed *with prejudice*.

We note, however, that nothing in this Order should be construed as commenting on the viability of any breach-of-contract claim Med-Stop might later assert against the Defendants, nor does this with-prejudice dismissal harm Med-Stop's substantive rights, because it may still bring a breach-of-contract action in the appropriate forum. *See Beck v. Lazard Feres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (explaining that Florida has a "five-year breach of contract statute of limitations" (citing FLA. STAT. § 95.11(2))).

## CONCLUSION

Accordingly, we hereby **ORDER and ADJUDGE** that the Defendants' Motion to Dismiss [ECF No. 115] is **GRANTED**. The Complaint [ECF No. 1] is **DISMISSED with prejudice**. All pending deadlines and hearings are **TERMINATED**, and any other pending motions are **DENIED as moot**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on January 3, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record